**Stow Kingdon HART, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–04–00118–CR.

Court of Appeals of Texas,
Texarkana.

Submitted June 2, 2005.

Decided Aug. 24, 2005.

Jeff C. Starnes, McLaughlin, Hutchison, Starnes & Biard, LLP, Paris, for appellant.

Deborah Moore, Asst. Dist. Atty., Gary Young, Dist. Atty., Paris, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Stow Kingdon Hart appeals from his conviction by a jury for aggravated sexual assault. The jury assessed his punishment at ninety-nine years' imprisonment. Before trial, the court held a hearing before a separate jury to determine whether Hart was competent to stand trial. The jury found him competent. Counsel raises a number of issues on appeal directed at both the competency hearing and the trial on the merits.

**The Hearing on Competency**

We first review the issues related to the competency determination. Hart contends the court erred by denying his motion for continuance because of the State's delay in turning over copies of examination videotapes made by a nontestifying State's expert, Mary Conroy, and relied on by a testifying State's expert, David Bell, until five o'clock on the evening before jury

selection was to begin for the competency hearing, and because Conroy's report was not provided until after the trial. Hart argues that, because of these failures, his counsel was unable to adequately prepare for the competency hearing.

This case involved a number of continuances obtained by Hart. There were several hearings at which the parties discussed the various experts who had been contacted, and whether the issue would be competency or sanity, and when information would be provided about the results of the experts' tests. The evidence ultimately shows that the four videotapes, containing six and one half hours of interview time by Conroy, were delivered to counsel on Monday afternoon, but one was blank.[1] When informed of this, the State made a replacement copy and delivered it to counsel on Tuesday at 5:00 p.m., the afternoon before the hearing was set to begin. After an extensive discussion of the length of time that Hart had been incarcerated awaiting trial, and the various other trial settings and a scheduled vacation of one of the attorneys, the court denied Hart's motion for a fifth continuance.

■■■ Hart contends the court erred by denying his motion for continuance. A trial court's ruling on a motion for continuance is reviewed for abuse of discretion. *Heiselbetz v. State*, 906 S.W.2d 500, 511 (Tex.Crim.App.1995); *see* Tex.Code Crim. Proc. Ann. arts. 29.03, 29.06(6) (Vernon 1989). To establish an abuse of discretion, there must be a showing the defendant was actually prejudiced by the denial of the motion. *Janecka v. State*, 937 S.W.2d 456, 468 (Tex.Crim.App.1996); *Heiselbetz*, 906 S.W.2d at 511.

Hart had not made bail and had been incarcerated between the date of his arrest July 23, 2003, and the competency trial May 26, 2004. Hart had originally argued to the trial court he believed Conroy's report might contain information favorable to the defense and thus he needed it to adequately cross-examine Bell about his conclusions. Conroy's report was not provided until after the hearing. Bell testified he had relied on the videotapes, not on Conroy's report. Conroy was retained to address the issue of Hart's sanity, not his competency to stand trial. Counsel argues that, in the absence of an earlier delivery of the videotapes and a timely delivery of Conroy's report, the defense was unable to effectively prepare for trial. Counsel did, however, two days before the hearing, have most of the interview that resulted in the report and had the remainder the afternoon before the hearing. In addition, although counsel generally argues prejudice, he makes no concrete suggestion of how the lateness of the delivery actually influenced his presentation or cross-examination at the hearing, or any actual prejudice that might have resulted. Our review shows that counsel did, in fact, ably question the expert about his observations of Hart and his alleged second personality, and discussed the concepts and theories connected with the existence of multiple personalities in a careful and understandable manner.

The trial court had reasons to deny the additional continuance, and even if some error had existed in its so doing, there is no indication of harm from this record. The contention is overruled.

Hart next contends the court erred during the competency hearing by refusing to allow him to voir dire the jury panel and to

---

1. That same day, Hart delivered the videotapes of his expert's examination of Hart to the State.

later submit a charge to the jury on the factors considered by an expert in determining competency. Counsel is evidently referring to the trial court's refusal to either allow him additional time to inform the jurors about Disassociative Identity Disorder or to question them further about the disorder. Thirty minutes per side was allotted for voir dire. The trial court did not rule that the area of questioning was improper; instead, the court pointed out that counsel had sufficient time to ask such questions, counsel had chosen not to, and counsel had wasted portions of his voir dire time, and the court then denied the request for additional time. No specific questions were propounded by counsel.

■■■ A trial court may impose reasonable restrictions on the exercise of voir dire examination, including reasonable limits on the amount of time each party can question the jury panel. *Caldwell v. State,* 818 S.W.2d 790, 793 (Tex.Crim.App.1991), *overruled on other grounds, Castillo v. State,* 913 S.W.2d 529 (Tex.Crim.App. 1995). A reasonable time limitation for one case may not be reasonable for another, and each case must be examined on its own facts. *Ratliff v. State,* 690 S.W.2d 597, 600 (Tex.Crim.App.1985); *Ganther v. State,* 848 S.W.2d 881, 882 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd). The amount of time allotted is not, standing alone, conclusive. *Ratliff,* 690 S.W.2d at 600; *Ganther,* 848 S.W.2d at 882. However, a trial court may not restrict proper questions that seek to discover a juror's views on issues relevant to the case. *McCarter v. State,* 837 S.W.2d 117, 121–22 (Tex.Crim.App.1992). Absent an abuse of discretion, we will not reverse the trial court's refusal to allow defense counsel

additional time on voir dire. *See id.; Caldwell,* 818 S.W.2d at 793; *Dhillon v. State,* 138 S.W.3d 583, 587 (Tex.App.-Houston [14th Dist.] 2004, no pet.).

■■■ When a party complains of an inability to collectively question the venire, a two-part test applies: (1) whether the complaining party attempted to prolong the voir dire;[2] and (2) whether the questions the party was not permitted to ask were proper voir dire questions. *See McCarter,* 837 S.W.2d at 121; *Dhillon,* 138 S.W.3d at 587–88.[3]

■■■ In this case, it does not appear that counsel attempted to prolong the voir dire. However, there are no specific questions propounded, and in the absence of such, it is impossible to determine whether the questions that might have been propounded were proper or improper. The question, as stated by counsel, presents only a general topic for discussion, indicating counsel merely wanted to question the panelists about whether the disorder was an illness they could consider and to let them know the nature of that disease. The question was not narrowly tailored in scope. *See Barajas v. State,* 93 S.W.3d 36, 40–41 (Tex.Crim.App.2002); *Smith v. State,* 703 S.W.2d 641, 645 (Tex.Crim.App. 1985); *Dhillon,* 138 S.W.3d at 589. Error has not been preserved for review.

■■■ Under this contention, Hart also complains of the trial court's failure to grant his request to charge the jury with the elements the statute directs experts to consider in their examinations of defendants for competency. TEX.CODE CRIM. PROC. ANN. art. 46B.024 (Vernon Supp. 2004–2005). The jury was charged as set

---

2. A party attempts to prolong the voir dire when such party asks irrelevant, immaterial, or repetitious questions. *Ganther,* 848 S.W.2d at 882–83.

3. Where individual questioning is involved, a defendant must also show that he or she was not permitted to examine jurors who served on the jury. *Ratliff,* 690 S.W.2d at 600.

out in TEX.CODE CRIM. PROC. ANN. art. 46B.003 (Vernon Supp.2004–2005), which provides the definition of incompetency.

Defense counsel's requested instruction contains factors set out by the statute as being necessary for the expert to consider in making his or her determination. Those factors were subject to questioning of the experts at the hearing, but that does not necessarily translate into factors that must be individually presented to the jury in the charge. There is no authority requiring those factors to be separately sent to the jury, and they are on their face factors directed at the expert for use in the expert's evaluation. Error has not been shown.

■ Hart also argues that the court erred by failing to disqualify the State's expert after the State's attorney took actions aimed at ensuring that the expert examined Hart without counsel present. As acknowledged by counsel, a defendant has no right to have counsel present during questioning by an expert in a competency examination. *Purtell v. State*, 761 S.W.2d 360, 374 (Tex.Crim.App.1988) (applying Sixth Amendment analysis and concluding that, although defendant has right to be warned and counsel has right to be informed of proposed examination, defendant has no right to have counsel present during examination). Counsel argues that, despite the caselaw to the contrary, Hart should have been allowed to bring an attorney with him because it would provide an opportunity for defense counsel to observe the interviewer and to more effectively cross-examine such expert at the competency hearing. We are unpersuaded, and in light of the holding of the Texas Court of Criminal Appeals, we are bound to apply that law as articulated by that court. The contention is overruled.

■ Hart also contends the trial court erred by not granting a motion for new trial after one of the prosecutors made faces at Hart during final argument at the competency hearing, causing Hart to respond in kind in front of the jury. The argument is that the prosecutor engaged in a type of prosecutorial misconduct. Claims of this nature are examined on a case-by-case basis. The Texas Court of Criminal Appeals has suggested some non-exclusive factors that are worthy of review in analyzing such a claim. First, the defendant objected to the conduct of the prosecutor. Second, the prosecutor was, by his or her actions, deliberately violating an express court order. Third, in reversing the cited cases, the court relied on prosecutorial misconduct so blatant as to border on being contumacious. *Stahl v. State*, 749 S.W.2d 826, 831 (Tex.Crim.App. 1988); *Landry v. State*, 706 S.W.2d 105, 111 (Tex.Crim.App.1985).

■ There are several unique factors in this case. There was no objection, as explained by appellate counsel, because at the time of the alleged misconduct he was in his own final argument and was neither looking at opposing counsel nor his client, and only became aware of the allegations after trial. Under these circumstances, we are reluctant to hold that any claim has not been preserved, because it involves allegations of wrongdoing that were allegedly specifically hidden from counsel's sight, and the lack of a contemporaneous objection was therefore understandable. Counsel's raising of the contention in his motion for new trial, supported by the affidavit of the defendant's wife, is sufficient to bring the matter before us as a review of the trial court's denial of the motion. The granting or denying of a motion for new trial lies within the discretion of the trial court. We do not substitute our judgment for that of the trial court, but rather decide whether the trial court's decision was arbitrary or unreason-

able. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex.Crim.App.1995); *State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex.Crim.App.1993).

In this case, the court conducted a hearing on the motion for new trial and was confronted with evidence a prosecutor had made faces at the defendant; the prosecutor, however, testified she had not done so. The court's denial of the claim was thus supported by evidence the event did not occur. Faced with that situation, we cannot conclude that the court's decision was arbitrary or unreasonable. The contention of error is overruled.

### The Trial on the Merits

Hart contends the court erred by refusing to allow him to introduce the testimony of his expert witness, Joann Ondrovik, Ph. D., a psychologist, that in her opinion Hart was acting under the influence of an alternate identity, the "blue man," at the time of the offense and therefore could not have voluntarily or knowingly committed the offense. Hart argues that, even though he withdrew his insanity defense before trial, he should have been able to introduce evidence about the nature of his illness through his expert, argue that he lacked the *mens rea* necessary for criminal responsibility and did not engage in a voluntary act.[4]

Hart cites *Mendenhall v. State*, 77 S.W.3d 815, 816 (Tex.Crim.App.2002), in support of his position. In that case, Mendenhall was diabetic and assaulted a public servant. He claimed the assault occurred during a time when he was "unconscious or semi-conscious due to hypoglycemia" and as a result he "did not knowingly, intentionally, or recklessly try to cause [the victim] harm," *id.*, and requested a jury instruction on the defense of insanity due to involuntary intoxication, which the trial court refused. In upholding the trial court, the Texas Court of Criminal Appeals stated:

> [T]he fact that two other defenses—the no-mental-state defense and the no-voluntary-act defense—are readily available to persons who were unconscious or semi-conscious at the time of the alleged offense suggests that the Legislature did not intend for the insanity defense also to apply to them. That is, persons who were unconscious or semi-conscious at the time of the alleged offense may argue either that they lacked the *mens rea* necessary for criminal liability, *see* Tex. Pen.Code § 6.02(a), or that they did not engage in a voluntary act, *see* Tex. Pen.Code § 6.01(a).

*Id.* at 818.

In the instant case, however, Hart at no time contended he was unconscious or semi-conscious at the time of the commission of the offense, and the trial court rejected Ondrovik's testimony as not being relevant.

We use an abuse of discretion standard when reviewing the trial court's decision on the admission of evidence. *Torres v. State*, 71 S.W.3d 758, 760 (Tex.Crim.App. 2002); *Burden v. State*, 55 S.W.3d 608, 615 (Tex.Crim.App.2001). An appellate court will not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *Torres*, 71 S.W.3d at 760; *Burden*, 55 S.W.3d at 615.

Hart, having abandoned his plea of insanity, and making no contention he committed the offense while unconscious or in a semi-conscious condition, we cannot say the trial court's ruling was outside the zone of reasonable disagreement. We therefore conclude that, under these facts, the trial court did not abuse its discretion by refusing to admit testimony at the

---

4. *See* TEX. PEN.CODE ANN. §§ 6.01(a), 6.02(a)  (Vernon 2003).

guilt/innocence stage of the trial about the alleged second personality.

Hart next contends the court erred by failing to grant his challenges for cause against prospective jurors 10, 27, and 48—and then refusing to grant him additional peremptory strikes. In our review, we look to see if the trial court abused its discretion in denying an appellant's challenges for cause. *Murphy v. State*, 112 S.W.3d 592, 600 (Tex.Crim.App. 2003). In reviewing a trial court's decision to grant or deny a challenge for cause, we are to look at the entire record to determine if there is sufficient evidence to support the court's ruling. *Sells v. State*, 121 S.W.3d 748, 759 (Tex.Crim.App.2003). We give great deference in our review to the trial court's decision because the trial court is present to observe the demeanor of the venireperson and to listen to such person's tone of voice. *Feldman v. State*, 71 S.W.3d 738, 744 (Tex.Crim.App.2002); *King v. State*, 29 S.W.3d 556, 568 (Tex. Crim.App.2000). We have been directed to give particular deference when the potential juror's answers are vacillating, unclear, or contradictory. *Feldman*, 71 S.W.3d at 744; *King*, 29 S.W.3d at 568.

Hart argues that his challenges for cause should have been sustained because juror number 10 stated that, when she first saw Hart, she wondered what he had done and assumed he was guilty because he was there, and was leaning toward voting guilty during voir dire; because juror number 27 was a former sexual assault victim; and because juror number 48 had heard about the case from a friend who was a Paris fireman (the victim is the wife of a Paris fireman), and had already made up her mind that an offense had occurred and that she could not disregard that belief.

Each juror was questioned individually about the matters set out by Hart. In each instance, each withdrew his or her equivocation and stated clearly that he or she could act in a fair manner, based solely on the evidence at the trial, without any impact on deliberations from any other source. Under this state of the evidence, we find the evidence sufficient to support the trial court's ruling. The contention of error is overruled.

Hart next contends the trial court erred by limiting Hart's voir dire examination of the jury panel on the range of punishment for aggravated sexual assault or the lesser included offense of sexual assault. Hart was accused of aggravated sexual assault with a deadly weapon, with two enhancements. The range of punishment (as indicted) was five to ninety-nine years' imprisonment with no enhancement, fifteen to ninety-nine years' confinement with one enhancement, or twenty-five to ninety-nine years with two enhancements.

The Texas Court of Criminal Appeals has stated repeatedly that both the state and the accused have the right to inform the jury of the range of punishment applicable to an offense, including a range that is enhanced, and to qualify the panel on the full range of punishment. *Martinez v. State*, 588 S.W.2d 954, 956 (Tex.Crim. App. [Panel Op.] 1979); *Bevill v. State*, 573 S.W.2d 781, 783 (Tex.Crim.App.1978). Under this formulation, the state may inform the jury panel of the range of punishment applicable if the state was to prove a prior conviction for enhancement purposes, but the state may not inform the jury of any specific allegations contained in an enhancement paragraph of a particular defendant's indictment. *Frausto v. State*, 642 S.W.2d 506, 509 (Tex.Crim.App. [Panel Op.] 1982); *Estes v. State*, 873 S.W.2d 771, 773 (Tex.App.-Fort Worth 1994, pet. ref'd).

In this case, Hart was not permitted to voir dire the jury on the range of punish-

ment that would have been proper had the State failed to prove its enhancements, or if the jury had found Hart guilty of a lesser-included offense. Under the cases cited above, this is error.[5]

Thus, we turn to the question of harm. Hart was convicted of the greater offense, aggravated sexual assault, with a deadly weapon finding, and with both enhancements found to be true, and was sentenced under the range of punishment for which the jury was actually questioned. We disapprove of the trial court's refusal to allow counsel to qualify the jury panel on the full range of punishment for the crime. However, because the sentence was determined under the range about which the panel was actually qualified, there was no harm in this instance. The contention of error is overruled.

■■■ Hart next raises a procedural issue: that the court committed reversible error by conducting the trial on the merits before all issues involving competency were finally resolved. Specifically, Hart complains his motion for new trial on competency was not ruled on until over a month after his trial on the underlying charge of aggravated sexual assault. Hart's argument is based on Tex.Code Crim. Proc. Ann. art. 46B.004(d) (Vernon Supp.2004–2005), which provides, "If the court determines there is evidence to support a finding of incompetency, the court . . . shall stay all other proceedings in the case." Hart argues that, because the competency issue was not finally resolved, the trial was begun prematurely, in violation of the statutory stay.

The statutes also provide that, if a jury determines a defendant is competent, the court shall continue the trial with another jury selected for that purpose. Tex.Code Crim. Proc. Ann. art. 46B.053 (Vernon Supp.2004–2005). The statutes do not indicate that a motion for a new competency trial is available, because the jury's determination of competency to stand trial is not a final, appealable judgment. *See Ortega v. State,* 82 S.W.3d 748 (Tex.App.-Houston [1st Dist.] 2002, no pet.); *Lowe v. State,* 999 S.W.2d 537, 537 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

Rule 21.4 of the Rules of Appellate Procedure provides that a defendant may file a motion for new trial before, but no later than thirty days after the date when the trial court imposes or suspends sentence in open court. Tex.R.App. P. 21.4. No sentence is imposed or suspended as the separate result of a competency hearing, but only as a result of the prosecution of the criminal charge. Accordingly, a motion for new trial is not an appropriate method to attack the ruling on competency and has no effect on this proceeding. The contention of error is overruled.

■■■ Hart next contends the court erred by overruling his motion for directed verdict. His argument is based on evidence that the gun was a BB gun, not a pellet gun as specifically alleged in the indictment. When the gun was introduced, the sponsoring officer read the identification stamping that identified it as a Powerline Model Number 93, CO2 BB gun.

■■■ Hart argues under variance law that, because the indictment specified the gun was a pellet gun, which varied substantially from proof it was a BB gun,

---

5. The State suggests that, because Hart clearly knew the enhancements would be proven, no error exists. That is incorrect, and had the State failed to prove the enhancements, an entirely different situation would exist, with Hart being denied his right to question the panel about the correct range of punishment.

he was entitled to a directed verdict.[6] "A 'variance' occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial." *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim.App.2001). Only a material variance requires reversal. *See Fuller v. State*, 73 S.W.3d 250, 253 (Tex.Crim.App.2002). "The widely-accepted rule, regardless of whether viewing variance as a sufficiency of the evidence problem or as a notice-related problem, is that a variance that is not prejudicial to a defendant's 'substantial rights' is immaterial." *Gollihar*, 46 S.W.3d at 247–48; *see Rojas v. State*, 986 S.W.2d 241, 246 (Tex.Crim.App.1998). The defendant has the burden of demonstrating surprise or prejudice. *Santana v. State*, 59 S.W.3d 187, 194 (Tex.Crim.App. 2001). To determine whether a defendant's "substantial rights" have been prejudiced, we must consider two questions: whether the indictment, as written, informed the defendant of the charge against her or him sufficiently to allow such defendant to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime. *Gollihar*, 46 S.W.3d at 248; *Brown v. State*, 159 S.W.3d 703, 709 (Tex.App.-Texarkana 2004, pet. ref'd).

In *Fuller*, the Texas Court of Criminal Appeals held that a variance between an indictment alleging the victim was "Olen M. Fuller" and the evidence at trial which referred to the victim as "Mr. Fuller" or as "Buddy" was an immaterial variance. *Fuller*, 73 S.W.3d at 254. Similar to *Fuller*, the variance in this case does not involve a statutory element of the offense and there is no showing that Hart was surprised or prejudiced by the variance. The indictment, as written, sufficiently informed Hart of the charge against him and the variance would not subject Hart to another prosecution for the same offense. The variance is immaterial. The contention of error is overruled.

■ Hart next raises several claims of error in connection with the admission of evidence in connection with the BB gun. He contends the court erred by allowing the State to designate and name an expert witness in midtrial to testify about the gun. A "standard" discovery order was entered by the trial court that directed both parties to disclose their expert witnesses no later than twenty days in advance of trial. Hart, in an abundance of caution, filed a request for a hearing to determine the State's compliance with that order. A hearing was held, at which the delivery of evidence expected to be used at trial was discussed. The court reiterated that, under the discovery order, evidence was to be turned over no later than thirty days [7] before trial, unless a good faith or reasonable cause exception applied.

The complained-of testimony is that of police sergeant Chris Brooks. He testified about a number of matters, including videotapes, an interview with the victim, his examination of the location of the attack, and characteristics of the gun. At no point during his testimony was he offered or qualified as an expert witness, nor did the court ever recognize him as such. During one discussion out of the jury's presence, the prosecutor clearly stated that Brooks was being used as a lay wit-

---

**6.** There is evidence a BB gun can fire one type of pellet, which is the same diameter as a BB. The evidence also shows a BB gun such as this one has a smooth bore, while a gun described as a pellet gun has a rifled bore.

**7.** The order states "not later than twenty (20) days...."

ness only. His testimony describing the gun was not based on "scientific, technical, or other specialized knowledge," but explicitly on his personal experiences using a BB or pellet gun. Accordingly, the complaint that he was improperly permitted to testify as an expert despite the State's failure to disclose that he would be used as such is without foundation in the record. Further, there was no objection suggesting that his testimony was the sort that could only be provided by an expert. The contention of error is overruled.

■ Hart also contends the court erred by refusing to allow him to have Brooks demonstrate to the jury that the gun was incapable of being fired, and by refusing to allow him to have the gun tested by his own expert to determine whether it was capable of firing. As pointed out, the barrel of the gun was plugged with some type of rubbery substance, and the slide for loading the gun was "glued in." Under those circumstances, the gun was clearly inoperable when taken into the possession of the police three days after the attack.

Hart contends he should have been allowed his own expert witness because the State used its own expert to examine and testify about the gun.[8] We have already determined the witness was not qualified as, and did not testify as, an expert. The argument fails. The contention of error is overruled.

Hart further contends he should have been allowed to demonstrate that the gun was incapable of firing and that Brooks' belief that someone could "shoot out" the obstruction in the barrel had no basis in reality. The reality is that the requested act could not have occurred during the trial. The evidence unequivocally shows it was impossible to load the gun with a BB, because both ends of the barrel were inaccessible—the slide for loading was glued shut and the end of the barrel was plugged. It might have been possible to pull out the obstruction for loading, but such removed material would then have to be reinserted to determine whether one could shoot through the identically reinserted obstruction. It is apparent such a demonstration was not likely to produce an accurate result. The trial court did not abuse its discretion in disallowing the demonstration. Further, the evidence clearly demonstrated to the jury that the gun was incapable of firing. Thus, additional evidence to that effect by a live demonstration would at best be cumulative of evidence already before the jury.

Under Rule 403, all relevant evidence is admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX.R. EVID. 403. Arguably, because part of the definition of deadly weapon includes anything that "in the manner of its use or intended use is capable of causing death or serious bodily injury,"[9] the question of whether a gun works is relevant to the issue of whether a deadly weapon was used. However, because the evidence in this case unequivocally shows that the gun was inoperable, a live demonstration would at best have been cumulative of the evidence already before the jury. We do not find that the trial court abused its discretion by refusing to allow the introduction of the demonstrative evidence suggested. *See Montgomery v.*

---

8. *See generally* TEX.CODE CRIM. PROC. ANN. art. 26.05(h) (Vernon Supp.2004–2005); *McBride v. State,* 838 S.W.2d 248 (Tex.Crim.App.1992).

9. TEX. PEN.CODE ANN. § 1.07(a)(17)(B) (Vernon Supp.2004–2005).

*State,* 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on reh'g).

Under this contention, Hart also contends he should have been permitted to present an identical BB gun to the jury— one that had not been altered and clearly showed the brass end of the barrel to indicate the gun was a BB gun, not a firearm. In support of his position that similar items may be introduced before the jury, he cites three cases, each of which involved situations where the actual item was not available for the jury's inspection, and introduction of a similar item was shown to assist the fact-finder in its determination.[10] In this case, the actual gun was before the jury, and there is no persuasive reason articulated that would require an identical (but unaltered) gun to be admitted into evidence. We find no abuse of discretion. *See id.*

Hart next contends the court erred by allowing the State to introduce a pen packet not previously and timely provided to counsel as required by the trial court's discovery order and the court's prior ruling on Hart's compliance motion. The pen packet was from Missouri and contained documents showing two convictions in that state. The packet was certified June 30, 2004, by the Missouri Department of Corrections, although the State's counsel informed the trial court it had been received June 29. A new pen packet was prepared and introduced reflecting the correct certification date. Counsel objected to its admissibility because it was not timely provided and because the packet contained a Texas judgment that had been faxed to Missouri. Counsel provides no authority to support his argument.[11] He does not suggest sur-

prise, because he was informed of the enhancements, along with the cause numbers of the Missouri convictions, by a document filed October 20, 2003, and notice was therefore provided and timely. *See Brooks v. State,* 957 S.W.2d 30, 31 (Tex. Crim.App.1997). He suggests no way in which he was harmed by the late presentation.

It is obvious that the actual packet was not provided before trial, as required by the court's "Standard Discovery Order." Further, this type of documentary evidence is the type contemplated by the order. However, the order contains specific limiting language by which it requires the State to turn over all documents that might be offered at trial and "which are in the possession, custody or control of the State or any of its agencies." This pen packet was not in the possession, custody, or control of the State until midtrial. Accordingly, the order was not violated on its face, and no error has been shown.

Hart next contends the trial court erred by failing to suppress his written statement. He argues he was coerced by the officer into giving a statement and thus his statements and the DNA evidence thereafter obtained should have been suppressed. Our review of the record reflects that this is a misstatement. The motion to suppress evidently covered Hart's written consent to obtain DNA samples and a consent to search the residence. There is no statement or confession in evidence.

In our review of the trial court's ruling on suppression, we recognize that the trial court is the exclusive trier of fact and judge of the credibility of the witnesses, and our review of its ruling is

---

**10.** *See Fletcher v. State,* 902 S.W.2d 165, 166 (Tex.App.-Houston [1st Dist.] 1995, pet. ref'd).

**11.** We note that TEX.R.APP. P. 38.1(h) requires counsel to make clear and concise arguments for his or her contentions, with appropriate citations to authority.

limited to a determination of whether the trial court abused its discretion. The general rule is that an appellate court should afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the trial court's fact-findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997).

■■■■ Consent must be voluntary to be effective, and if that consent is the result of coercion, the consent is involuntarily obtained. In determining whether consent was voluntary, we look to certain relevant factors, such as: the youth of the accused; the education of the accused; the intelligence of the accused; the constitutional advice given to the accused; the length of the detention; the repetitiveness of the questioning; and the use of physical punishment. *Reasor v. State*, 12 S.W.3d 813, 818 (Tex.Crim.App.2000); *State v. Hunter*, 102 S.W.3d 306, 311 (Tex.App.-Fort Worth 2003, no pet.). Additionally, testimony by law enforcement officers that no coercion was involved in obtaining the consent is evidence of the consent's voluntary nature. *Martinez v. State*, 17 S.W.3d 677, 683 (Tex.Crim.App.2000); *Hunter*, 102 S.W.3d at 311. Consent is not rendered involuntary merely because the accused is under arrest. *Johnson v. State*, 68 S.W.3d 644, 653 (Tex.Crim.App.2002); *Harrison v. State*, 144 S.W.3d 82, 88 (Tex.App.-Fort Worth 2004, pet. granted). A police officer's failure to inform the accused that he or she may refuse consent is a factor to consider in determining the voluntariness of consent; however, the absence of such information does not automatically render the accused's consent involuntary. *Johnson*, 68 S.W.3d at 653; *Levi v. State*, 147 S.W.3d 541, 545 (Tex.App.-Waco 2004, pet. ref'd).

■■ The evidence consisted of a videotape (and its transcription) of the process through which consent was obtained. Hart points to the parts of the process where he was told that he "needed to give the officers what they needed in order to clear his name," that it would be better off in the long run for him and his family that the police go to his residence. There is no evidence of physical mistreatment; there is evidence Hart was in custody at the time (although the officer was uncertain himself); and that *Miranda*[12] warnings were read to him. Hart was in his early forties at the time of the offense, so youth was not a consideration. Although there was a competency hearing, the evidence in that regard showed he had at least average intelligence, and there was no indication he was not competent at the time he gave consent. Although unclear, the trial court was informed that Hart had been with the police approximately an hour before being given the *Miranda* warnings and that the consent was given about four hours after he came to the police station. The record does not show any activity by the officers that would be such as to overpower the free will of the defendant, and we do not find that the court abused its discretion by denying the motion to suppress.

■■ Hart next contends the trial court erred by failing to grant him a new trial after it was discovered that juror Stephanie Flynn did not disclose she had been previously married to Paris police officer Jeff Kinslow, nor did she disclose that Kinslow's uncle had been the victim of a capital murder during an armed robbery. This information was brought to the court's attention during the hearing on Hart's motion for new trial. Hart argues Flynn did not respond truthfully during

---

**12.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

voir dire and, because of this failure, a juror who he would have struck was on the jury.

When a juror withholds material information during voir dire, the parties are denied the full opportunity to intelligently exercise their challenges, thus hampering their selection of a disinterested and impartial jury. *Franklin v. State,* 138 S.W.3d 351, 355 (Tex.Crim.App.2004). A defendant is entitled to reversal if the omission is material and the defendant has exercised due diligence in eliciting that information. *Id.* at 356.

Counsel asked the panel, "Who all here is involved in law enforcement or has a close friend, family member, or relative that is involved or has been involved in law enforcement?" Flynn did not respond. However, Flynn was divorced seven months earlier from the police officer, which necessarily means that neither Kinslow nor his relatives were family members or relatives. It is likely she also does not consider her ex-husband a close friend, and the ex-husband's uncle had been killed over ten years earlier.

In his closing questions to the jury panel, Hart's counsel also asked jurors to respond if they felt that, "You know, if you had asked that question, I would have raised my hand; and there is no way in the world they would pick me to be on that jury?" The answer to that question is one that is necessarily internalized, and there is no evidence that bears on the matter. *Cf. Armstrong v. State,* 897 S.W.2d 361, 363–64 (Tex.Crim.App.1995) (existence of ongoing close friendship and relationship not reversible when questions asked not specific enough to draw out the answer).

The granting or denying of a motion for new trial lies within the discretion of the trial court. We do not substitute our judgment for that of the trial court, but rather decide whether the trial court's decision was arbitrary or unreasonable. *Salazar v. State,* 38 S.W.3d 141, 148 (Tex. Crim.App.2001); *Lewis v. State,* 911 S.W.2d 1, 7 (Tex.Crim.App.1995). Based on the information before the trial court, we cannot find that the court's decision was unsupportable, nor can we say the questions were not sufficiently specific to the nondisclosed information to allow a conclusion that Flynn answered untruthfully. The contention of error is overruled.

Hart finally contends the trial court erred by showing the jury photographs of the tattoos of nude women on his thighs. He objected at trial, arguing they were more prejudicial than probative because of their subject matter, specifically in light of the victim's previous testimony she could not identify the tattoos—but did testify there were tattoos on the thighs of her attacker. Hart offered to stipulate there are tattoos on his thighs. The court overruled Hart's objections and allowed admission of the photographs.[13]

Counsel argues the photographs of the tattoos were of such graphic subject matter they would sway the jury in some irrational and emotional fashion. The stipulation would undeniably have served to meet the State's needs in this instance, especially since the victim could not describe their appearance. The admission of evidence subject to this objection is controlled by TEX.R. EVID. 403, which provides (among other things) that evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

---

**13.** Hart also was required to roll up his sleeves and display the tattoos on his arms.

The victim was able to specifically identify and describe these tattoos.

Once a defendant objects to photographic evidence on the basis of Rule 403, the trial court must weigh its probative value against its potential for unfair prejudice. *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex.Crim.App.1992). An appellate court reviewing the trial court's decision may reverse only for an abuse of discretion, i.e., only when the trial court's decision was outside the zone of reasonable disagreement. *Id.* The trial court must consider the "host of factors affecting probativeness ... and balance those factors against the tendency, if any, that the photographs have to encourage resolution of material issues on an inappropriate emotional basis." *Ladd v. State*, 3 S.W.3d 547, 568 (Tex.Crim.App.1999).

In this case, although the tattoos are graphic representations of a nude woman, they are not such that we believe they would necessarily sway a jury into resolving the case based on emotion rather than reason. We find the decision to be within the zone of reasonable disagreement. The contention of error is overruled.

We affirm the judgment.