In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00154-CR


______________________________




ERIC ALVARADO, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 71st Judicial District Court


Harrison County, Texas


Trial Court No. 08-0038X




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Eric Alvarado appeals from the pretrial determination that he be tried as an adult. According
to the judgment in the record before us, his sentence was imposed April 4, 2008. Alvarado filed a
motion for new trial May 9, 2008, and his notice of appeal was filed July 3, 2008. According to
Rule 21.4, Alvarado had thirty days after the day sentence was imposed to file his motion for new
trial. See Tex. R. App. P. 21.4. Because the thirtieth day fell on a Sunday, Alvarado had until the
following Monday, May 5, 2008, to file a motion for new trial. See Tex. R. App. P. 4.1. The motion
for new trial was filed on May 9 (1) and was thus untimely. (2) Alvarado was thus required to file his
notice of appeal within thirty days of the date sentence was imposed. See Tex. R. App. P. 26.2(a)(1). 
Because the notice of appeal was not filed within thirty days of the date sentence was imposed, this
appeal is untimely and we are without jurisdiction to hear this case. See Tex. R. App. P. 21.4,
26.2(a).





 We dismiss this appeal for want of jurisdiction. 


 Bailey C. Moseley

 Justice


Date Submitted: July 28, 2008 

Date Decided: July 29, 2008 


Do Not Publish




1. The certificate of service on the motion for new trial is also dated May 9. Therefore, the
mailbox rule does not apply. See Tex. R. App. P. 9.2(b).
2. We note in the clerk's record that Alvarado, on July 3, 2008, along with his notice of appeal,
filed a motion to deem the motion for new trial timely. This motion was filed outside the trial court's
plenary power and was not ruled on.


th argues the
indictment was fundamentally defective. Mantooth's third and fourth points of error argue the
evidence is legally and factually insufficient. In his fifth issue, Mantooth claims the trial court erred
in convicting him of a third degree felony. In his last issue, Mantooth argues the sentence exceeds
the applicable punishment range.

I. The Indictment Does Not Contain Fundamental Error

 In Mantooth's first and second points of error, Mantooth claims the error in the indictment
constitutes fundamental error because it failed to allege when Mantooth's duty to register expired
under Article 62.101(b). Mantooth also alleges the indictment failed to allege he was under a duty
to register at the time of the offense. Historically, defects of substance were "fundamental" errors
and could be challenged at any point in the proceedings. See, e.g., Morris v. State, 13 Tex. Ct. App.
65, 71 (1882); see also Cook v. State, 902 S.W.2d 471, 476 (Tex. Crim. App. 1995). In 1985, Texas
voters approved an amendment to Section 12 of Article V of the Texas Constitution that the
presentation of an indictment or information vests the trial court with jurisdiction over the case. See
Tex. Const. art. V, § 12; see also Studer v. State, 799 S.W.2d 263, 272 (Tex. Crim. App. 1990). 
A defendant now waives any defect of form or substance in an information if no objection is made
before the date trial commences. See Tex. Code Crim. Proc. Ann. art. 1.14(b) (Vernon 2005). 

 We note an instrument which is not an indictment or information under Article V, Section
12 of the Texas Constitution fails to vest the trial court with jurisdiction and the issue can be raised
for the first time on appeal. See Duron v. State, 956 S.W.2d 547, 555 (Tex. Crim. App. 1997)
(Womack, J., concurring); Cook, 902 S.W.2d at 479-80; see also Teal v. State, 230 S.W.3d 172, 180
(Tex. Crim. App. 2007). The omission of an element of the offense, though, does not prevent the
instrument from being an information. The Texas Court of Criminal Appeals held, in Studer, that
"the language in Art. V, § 12, 'charging a person with the commission of an offense,' does not mean,
. . . that each element of the offense must be alleged in order to have an indictment or information
as contemplated by Art. V, § 12." Studer, 799 S.W.2d at 272. "[T]o comprise an [information]
within the definition provided by the constitution, an instrument must charge: (1) a person; (2) with
the commission of an offense." Cook, 902 S.W.2d at 477. "[A] written instrument is an indictment
or information under the Constitution if it accuses someone of a crime with enough clarity and
specificity to identify the penal statute under which the State intends to prosecute, even if the
instrument is otherwise defective." Duron, 956 S.W.2d at 550-51. Because the information is
sufficient to identify the penal statute under which the State intends to prosecute, the error is not a
"fundamental" error. Mantooth's first and second points of error are overruled.

II. The Evidence Is Legally and Factually Sufficient

 Mantooth contends, in his third and fourth points of error, that the evidence is legally and
factually insufficient. Before we begin our analysis, a brief overview of the relevant statutes is in
order. A person commits the offense of failure to comply with registration requirements if the
person "is required to register and fails to comply with any requirement" of Chapter 62. Tex. Code
Crim. Proc. Ann. art. 62.102 (Vernon 2006). 

 There is no dispute concerning whether Mantooth failed to comply with the registration
requirements of Chapter 62. Whether one is required to report for his or her lifetime or only for ten
years, the reporting requirements during the relevant period are the same. A person fails to comply
with registration requirements if he or she fails to give seven days' notice of intent to change
addresses, fails to report a change of address within seven days, or fails to report a change in
employment status within seven days. See Tex. Code Crim. Proc. Ann. arts. 62.055, 62.057(b),
62.102 (Vernon 2006). The State introduced evidence that Mantooth had failed to report a change
in employment status within seven days, failed to give seven days' notice of his intent to change his
residence, and failed to report his change of residence within seven days. Mantooth does not
challenge the proof of these facts. The dispute in this case is whether the State proved Mantooth had
a duty to register under Article 62.101(b) as alleged.

 A violation of Article 62.102 is a state jail felony if the person's duty to register expires under
Article 62.101(b) or (c), but is a third degree felony if the person's duty to register expires under
Article 62.101(a). Article 62.101(a) provides: 

 Except as provided by Subsection (b) and Subchapter I, the duty to register for a
person ends when the person dies if the person has a reportable conviction or
adjudication, other than an adjudication of delinquent conduct, for:


 (1) a sexually violent offense . . . .


Tex. Code Crim. Proc. Ann. art. 62.101(a). A "sexually violent offense" includes sexual assault. 
Tex. Code Crim. Proc. Ann. art. 62.001(6)(A) (Vernon Supp. 2008). The sex-offender registration
statute specifically includes attempted sexual offenses as "reportable convictions or adjudications." 
Tex. Code Crim. Proc. Ann. art. 62.001(5)(G) (Vernon Supp. 2008). Subchapter I concerns early
termination of a person's obligation to register and is not relevant in this case. Article 62.101(b)
provides as follows in its entirety: 

 Except as provided by Subchapter I, the duty to register for a person otherwise
subject to Subsection (a) ends on the 10th anniversary of the date on which the
person is released from a penal institution or discharges community supervision or
the court dismisses the criminal proceedings against the person and discharges the
person, whichever date is later, if the person's duty to register is based on a
conviction or an order of deferred adjudication in a cause that was transferred to a
district court or criminal district court under Section 54.02, Family Code.


Tex. Code Crim. Proc. Ann. art. 62.101(b). Article 62.101(c) provides a "catch-all" provision that
provides for reportable convictions or adjudications not described by subsection (a). Tex. Code
Crim. Proc. Ann. art. 62.101(c) (Vernon 2006).

 The amended indictment alleged that Mantooth had a duty to register under Article
62.101(b). In order to evaluate the sufficiency of the evidence, we must first determine whether the
State's allegation that Mantooth had a duty to register under Article 62.101(b) must be included in
the hypothetically correct jury charge. 

 A. The Hypothetically Correct Jury Charge Must Include the Statutory Elements
of the Offense and the Statutorily Alternative Manner and Means


 The State incorrectly argues that we evaluate the sufficiency of the evidence by the charge
submitted to the jury. (2) The Texas Court of Criminal Appeals has held that evidence sufficiency
should be measured against a "hypothetically correct" jury charge. See Gollihar v. State, 46 S.W.3d
243, 253 (Tex. Crim. App. 2001); Malik, 953 S.W.2d at 240; see also Wooley v. State,
No. PD-0861-07, 2008 Tex. Crim. App. LEXIS 762 (Tex. Crim. App. June 25, 2008) (clarifying
factual sufficiency measured by hypothetically correct jury charge). Malik controls "even in the
absence of alleged jury charge error." Gollihar, 46 S.W.3d at 255. 

 A "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized
by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily
restrict the State's theories of liability, and adequately describes the particular offense for which the
defendant was tried." Malik, 953 S.W.2d at 240. The "hypothetically correct" jury charge cannot
"wholly re-write the indictment," but is not required to "track exactly all of the allegations in the
indictment." Gollihar, 46 S.W.3d at 253. If the essential elements of the offense are modified by
the indictment, the modification must be included. Id. at 254. The hypothetically correct charge
"need not incorporate allegations that give rise to immaterial variances." Gollihar, 46 S.W.3d at 256. 

 In Curry, the Texas Court of Criminal Appeals held that the "'law' as 'authorized by the
indictment' must be the statutory elements" of the offense charged "as modified by the charging
instrument." Curry v. State, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000). Because the phrase "by
using and threatening to use deadly force namely, a firearm, on [the victim]" alleged a statutory
alternative "manner or means," the court held the State was bound by the allegation in the
indictment. Id. at 403-04. Judge Keller has succinctly summarized Curry as holding, "[w]hen a
statute lists more than one method of committing an offense, and the indictment alleges some, but
not all, of the statutorily listed methods, the State is limited to the methods alleged." Fuller v. State,
73 S.W.3d 250, 255 (Tex. Crim. App. 2002) (Keller, P.J., concurring).

 Stated succinctly, the hypothetically correct jury charge must include both 1) allegations that
form an integral part of an essential element of the offense or allegations that are statutorily
alternative manner and means, and 2) material variances. See Gollihar, 46 S.W.3d at 256. We will
first examine whether the allegation that Mantooth had a duty to register under Article 62.101(b) was
an integral part of an essential element of the offense and then examine whether the allegation was
a material variance.

 B. The Allegation that Mantooth Had a Duty Under Article 62.101(b) Is Not an
Essential Element


 The next question before this Court is whether the applicable duty under Article 62.101 is
an "integral part of an essential element" of the offense. (3) See id. at 254 (explaining Curry, 30
S.W.3d 394). Whether the various subsections of Article 62.101 form an integral part of an essential
element of an offense appears to be an unsettled area of law. (4) 

 When determining whether Apprendi (5) applied to a predecessor to Article 62.101, the Texas
Court of Criminal Appeals suggested in a footnote that the "much preferred procedure is to plead the
specific subsection in the indictment." Juarez v. State, 198 S.W.3d 790, 792-93 n.7 (Tex. Crim.
App. 2006) (concluding Apprendi did not apply). This statement implies that allegation of the
subsection is not required. If it is the "much preferred" practice, it is not the required practice. 
Because essential elements of an offense must be alleged in the indictment, Juarez suggests the
specific subsection under Article 62.101 is not an essential element of the offense.

 Although merely persuasive authority, the form charge in the Texas Practice Series merely
requires the reportable conviction to be included in the indictment; it does not require the indictment
to specify which subsection applies to the offense. 7 McCormick, Blackwell & Blackwell,
Texas Practice: Criminal Forms And Trial Manual § 42.12 (2005). A number of Texas cases
indicate that indictments often fail to allege which subsection of Article 62.101 is applicable. See
Ramos v. State, No. 13-05-00015-CR, 2006 Tex. App. LEXIS 4922 (Tex. App.--Corpus Christi
June 8, 2006, pet. ref'd) (mem. op., not designated for publication) (indictment merely alleged
reportable conviction for sexual assault and defendant committed offense "while being a person
required to register"); Basey v. State, No. 01-03-01014-CR, 2005 Tex. App. LEXIS 1329 (Tex.
App.--Houston [1st Dist.] Feb. 17, 2005, no pet.) (mem. op., not designated for publication)
(indictment merely alleged reportable conviction and defendant committed offense "while being a
person required to register"); Milligan v. State, No. 03-99-00191-CR, 2000 Tex. App. LEXIS 2560
(Tex. App.--Austin Apr. 20, 2000, pet. ref'd) (not designated for publication) (merely alleged
reportable conviction). But see Cantu v. State, No. 02-05-00192-CR, 2006 Tex. App. LEXIS 1884
(Tex. App.--Fort Worth Mar. 9, 2006, no pet.) (mem. op., not designated for publication) (alleging
both reportable conviction and subsection). 

 This Court, albeit in a different context, has stated the State is merely required to prove the
defendant's "status as a person with a reportable conviction." Moore v. State, 38 S.W.3d 232, 235
(Tex. App.--Texarkana 2001, pet. ref'd). Moore involved whether the current version or the prior
version of the sex-offender registration statute applied. Id. Extending the reasoning of Moore, the
State was not required to allege which subsection applied because only the defendant's status as a
sex offender is an element of the crime. The allegation of a reportable conviction would be sufficient
to allege the defendant's status as a sex offender.

 We conclude that the various subsections of Article 62.101 are not elements of the offense
of failure to register. The notice of the reportable conviction provides sufficient notice to the
accused. Any given reportable conviction gives rise to a duty under only one of the subsections of
Article 62.101. Once the State alleges a reportable conviction, the determination of which
subsection of Article 62.101 applies is purely a question of law. It is undisputed that Mantooth's
previous conviction was for a sexual offense which occurred after he turned eighteen years old. 
Once the underlying reportable conviction is alleged, the duty to register can be determined as a
matter of law. The essential element of the offense is the defendant's "status as a sex offender" by
virtue of a reportable conviction. As such, only the reportable conviction must be alleged in the
indictment. The applicable subsection of Article 62.101 is not an integral part of an essential
element of the offense. 

 C. The Variance Is Immaterial

 Since we have concluded the allegation is not an integral part of an essential element, the
next step is to determine whether the variance is material. A variance occurs when there is a
discrepancy between the allegations in the charging instrument and the proof at trial. In re S.C., 229
S.W.3d 837, 841 (Tex. App.--Texarkana 2007, pet. denied). "The widely-accepted rule, regardless
of whether viewing variance as a sufficiency of the evidence problem or as a notice-related problem,
is that a variance that is not prejudicial to a defendant's 'substantial rights' is immaterial." Hart v.
State, 173 S.W.3d 131, 144 (Tex. App.--Texarkana 2005, no pet.) (quoting Gollihar, 46 S.W.3d at
247-48; and referencing Rojas v. State, 986 S.W.2d 241, 246 (Tex. Crim. App. 1998)). When
determining whether a defendant's "substantial rights" have been prejudiced, we must consider two
questions: 1) whether the indictment, as written, informed the defendant of the charge against him
or her sufficiently to allow such defendant to prepare an adequate defense at trial, and 2) whether
prosecution under the deficiently drafted indictment would subject the defendant to the risk of being
prosecuted later for the same crime. See S.C., 229 S.W.3d at 841; Brown v. State, 159 S.W.3d 703,
709 (Tex. App.--Texarkana 2004, pet. ref'd). 

 Although the State alleged a duty to register under Article 62.101(b) (ten-year reporting
requirement), the evidence established Mantooth had a duty to register as a sex offender under
Article 62.101(a) (lifetime reporting requirement). Thus, there is a variance between the indictment
and the evidence at trial. However, there is no evidence that the variance failed to permit Mantooth
to prepare an adequate defense at trial. It is uncontested that no one noticed the State alleged the
wrong subsection until the punishment portion of the trial. Mantooth prepared for trial with the
understanding he was being charged with violating a lifetime duty to register. Further, the
enhancement paragraph in the indictment alleged that Mantooth had previously been convicted for
violating his lifetime duty to register. Nor is there any risk that Mantooth would be subjected to the
risk of being prosecuted a second time for the same crime. The variance is immaterial and, therefore,
does not need to be included in the hypothetically correct jury charge. 

 D. The Evidence Is Legally and Factually Sufficient

 Because the hypothetically correct jury charge does not have to contain the State's allegation
that Mantooth had a duty to register under Article 62.101(b), the evidence is legally and factually
sufficient. The hypothetically correct jury charge would only require the jury to find that Mantooth
had the reportable conviction alleged by the State. 

 In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000). In a factual sufficiency review, we review all the evidence, but do so in a neutral
light and determine whether the evidence supporting the verdict is so weak or is so outweighed by
the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or
manifestly unjust. Lancon v. State, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

 The State proved the reportable conviction alleged and proved Mantooth's failure to notify
the State of his changed residence and changed employment status. The State introduced a copy of
the judgment finding Mantooth guilty of attempted sexual assault of a child as alleged in the
indictment. Mantooth testified he was the person "that was convicted of attempted sexual assault
of a child back in 1991." When last released from prison, Mantooth listed his address as 154 South
First Street, Deport, Texas. Mantooth informed the police that he was working as a self-employed
mechanic out of his house. Deputy Travis Rhodes, a deputy with the Lamar County Sheriff's Office,
testified he informed Mantooth of his duty to report a change of residence and employment. A copy
of Mantooth's pre-release notification form explaining his duty to register was introduced into
evidence. 

 After receiving information that Mantooth may have changed his residence, Rhodes visited
154 South First Street and discovered there was no electricity and the telephone service had been
disconnected. The refrigerator door was standing open, and the house was "[p]retty much an empty
house." Several partially filled boxes were in the house like someone was moving out. The grass
was high, and there were no vehicles around the house that would be consistent with Mantooth
running a mechanic business from the home. Rhodes discovered during his investigation that
Mantooth had been working at the Blackland Prairie Gin for several weeks and had moved his shop
to a building on Main Street several months earlier. Nancy Grissom, vice president and secretary
of Blackland Prairie Gin, testified Mantooth had been employed by the company. Because the
majority of Mantooth's possessions were located in a recreational vehicle parked at the shop
building, Rhodes concluded Mantooth was living in the recreational vehicle. Photographs of both
the 154 South First Street residence and the recreational vehicle were introduced into evidence. A
rational juror could have concluded Mantooth was guilty beyond a reasonable doubt. The evidence
is legally sufficient.

 At trial, Mantooth testified his son was moving out of the house when Rhodes visited. 
According to Mantooth, he still lived at the house located at 154 South First Street and the personal
items in the recreational vehicle were merely stored there. Mantooth admitted working at the gin
and moving the shop. The jury was entitled to believe the State's version of events over Mantooth's
testimony. The contrary evidence is not so strong that the jury's verdict is so against the great weight
and preponderance of the evidence that it is clearly wrong or manifestly unjust. The evidence is
factually sufficient.

 The evidence is legally and factually sufficient to prove Mantooth committed the offense of
failure to comply with sex-offender registration requirements. The reportable conviction created a
duty under Article 62.101(a) which made the offense a third degree felony. Because Mantooth was
actually convicted under Article 62.101(a), Mantooth's remaining points of error are moot. (6)

III. Conclusion

 Any error in the indictment is not fundamental error. Although the State alleged a duty to
register under Article 62.101(b), the evidence established Mantooth had a duty to register as a sex
offender under Article 62.101(a). The hypothetically correct jury charge was not required to contain
the allegation that Mantooth had a duty under Article 62.101(b) since the allegation was not an
integral part of an essential element or a material variance. The hypothetically correct jury charge
was only required to contain the alleged reportable conviction. The State proved the reportable
conviction it alleged and proved Mantooth's failure to report a change of residence and change of
employment. As such, the State proved Mantooth committed a third degree felony when he failed
to report his change of residence and change of employment. Because Mantooth was convicted of
a third degree felony, Mantooth's fifth and sixth points of error are moot. 

 For the reasons stated, we affirm the judgment of the trial court.




 Jack Carter

 Justice


Date Submitted: August 13, 2008

Date Decided: September 30, 2008


Publish
1. See Act of May 28, 2003, 78th Leg., R.S., ch. 374, § 14, 2003 Tex. Gen. Laws 1505,
1513-14, amended and renumbered by Act of May 24, 2005, 79th Leg., R.S., ch. 1008, § 1.01, 2005
Tex. Gen. Laws 3385, 3410.
2. The State cites Fisher v. State, 887 S.W.2d 49, 53 (Tex. Crim. App. 1994); Smith v. State,
135 S.W.3d 259, 261-62 (Tex. App.--Texarkana 2004, no pet.); Ramos v. State, No. 06-05-00103-CR, 2006 Tex. App. LEXIS 3750 (Tex. App.--Texarkana May 4, 2006, no pet.) (not designated for
publication), for the proposition that the sufficiency of the evidence should be measured by the
charge submitted to the jury. Smith does not support the State's argument. See Smith, 135 S.W.3d
at 261. Ramos, 2006 Tex. App. LEXIS 3750, is an unpublished opinion and has no precedential
value. Tex. R. App. P. 47.7. In Malik v. State, the Texas Court of Criminal Appeals reviewed a line
of cases requiring the sufficiency of the evidence to be measured by the jury charge, and specifically
overruled those cases. 953 S.W.2d 234, 239-40 (Tex. Crim. App. 1997) ("No longer shall
sufficiency of the evidence be measured by the jury charge actually given."). Instead, the Texas
Court of Criminal Appeals announced that the test was based on the elements of the offense as
defined by the hypothetically correct jury charge. Id. at 240. 
3. There is no allegation that Article 62.101(b) is a statutorily alternative manner and means. 
The Texas Court of Criminal Appeals cautioned that "[n]ot every list of alternatives in a statute will
constitute a 'manner or means' of committing the offense." Curry, 30 S.W.3d at 398. We do not
believe the list of categories specifying the circumstances when one must report for life or only for
ten years constitutes statutorily alternative manner and means. 
4. We note the Austin Court of Appeals, while discussing a different issue, has held the duty
to register is an element of the offense. Ballard v. State, 149 S.W.3d 693, 699 (Tex. App.--Austin
2004, pet. ref'd). We are not aware of any other cases addressing whether Article 62.101(b) is an
essential element of the offense of failure to register.
5. Apprendi v. New Jersey, 530 U.S. 466 (2000).
6. Mantooth argues in his fifth point of error that the conviction under Article 62.101(b) was
improperly enhanced to a third degree felony. In his last point of error, Mantooth argues the trial
court erred in sentencing him to eight years for a state jail felony. Because Mantooth was convicted
of violating a lifetime duty--a third degree felony--Mantooth's remaining arguments are moot. 
Mantooth was convicted of a third degree felony, and an eight-year sentence is within the statutory
range for a third degree felony.