

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00361-CR

ROBBIE GREEN ROBERTSON                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

### FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In two points, Appellant Robbie Green Robertson appeals his conviction of aggravated robbery with a deadly weapon.  We affirm.

## II. Background

The State charged Robertson with aggravated robbery with a deadly weapon.  A jury subsequently found Robertson guilty, and after Robertson

---

[1]*See* Tex. R. App. P. 47.4.

pleaded true to the repeat offender notice in the indictment and the State introduced Robertson's 2007 conviction for robbery by threat, the jury assessed his punishment at twenty-three years' confinement. Because Robertson's two challenges pertain solely to voir dire, we will review that portion of the record in our discussion below.

### III. Voir Dire

In his first point, Robertson complains about the trial court granting the State's challenge for cause to Venireperson #2, and in his second point, Robertson argues that the trial court erred by instructing the veniremembers on the incorrect penalty range.

### A. Challenge for Cause

In his first point, Robertson claims that the trial court erred by granting the State's challenge for cause to Venireperson #2 because she "only expressed reservations about assessing punishment at the high end of the punishment range," and because the State "never developed this as a bias nor did [it] explain the law or ask whether she could set aside her beliefs and follow the law." Therefore, Robertson argues, the challenge for cause was wholly underdeveloped and the erroneous granting of the challenge resulted in the State getting an extra strike, "depriving [him] of an equal number of peremptory strikes" in violation of the state and federal constitutions and code of criminal procedure article 35.15.

The State can challenge for cause a juror who cannot consider the full range of punishment. Tex. Code Crim. Proc. Ann. art. 35.16(b)(3) (West 2006). In reviewing a trial court's decision to grant a challenge for cause, the court of criminal appeals has explained that we must

> look at the entire record of voir dire to determine if the evidence is sufficient to support the court's ruling on a challenge for cause. We afford great deference to the trial court's decision because the trial judge is present to observe the demeanor of the venireperson and to listen to his tone of voice. Particular deference is due when the venireperson's answers are "vacillating, unclear, or contradictory." Consequently, we will reverse a trial court's ruling on a challenge for cause only if a clear abuse of discretion is evident.

*Gonzales v. State*, 353 S.W.3d 826, 831 (Tex. Crim. App. 2011) (citations omitted). Further, the erroneous excusing of a veniremember will call for reversal only if the record shows that the error deprived the defendant of a "lawfully constituted jury." *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009) (quoting *Jones v. State*, 982 S.W.2d 386, 394 (Tex. Crim. App. 1998), *cert. denied*, 528 U.S. 985 (1999)).

With regard to Venireperson #2, the following occurred during voir dire:

[Prosecutor]: . . . But is there anybody else—other than what we've talked about, anybody here who just feels like I just can't sit in judgment of another person, whether it's for philosophical reasons or whatever? I know we've got some already—

[Venireperson #26]: I understand that as a United States citizen, it's my responsibility to be a juror, but I have a real hard time deciding the fate of another person. I have a hard enough time making decisions about my own life. I just don't think that I could in good faith do that.

[Prosecutor]: Okay. I appreciate that. Anybody else?

[Venireperson #48]:  I agree with her.

[Prosecutor]:  You agree?  You don't feel like you would be able to sit as a juror and pass judgment?

[Venireperson #48]:  No.

[Prosecutor]:  Okay.  Yes, ma'am.

[Venireperson #18]:  I feel like her.  I do.

[Prosecutor]:  All right. Ma'am.

[Venireperson #2]:  *I do.  I feel like I can't make the commitment to the higher end of it*.

[Prosecutor]:  You're concerned about the high end of the punishment range?

[Venireperson #2]:  *Yeah.  To me, that doesn't give them a chance to come out and do better*.  [Emphasis added.]

[Prosecutor]:  Okay.  Anybody else?

All right.  Well, thanks for participating. . . .  And unless anybody has anything else, I think I'm done.  Thanks.

Prior to these statements by Venirepersons #26, #48, #18, and #2, Venirepersons #7, #8, and #55 had already stated their concerns about the range of punishment.[2]

The magistrate granted the State's challenges for cause to Venirepersons #8, #18, and #26 before reaching Venireperson #2—the only challenge for cause

_____

[2]Specifically, Venireperson #8 said that he would not be able to keep an open mind to the possibility of assessing ninety-nine years, and Venireperson #7 agreed with Venireperson #8, saying that he absolutely could not give someone as much as ninety-nine years or life.  In contrast, Venireperson #55 said that he had a problem with the low end of the punishment range.

that Robertson complains of in this appeal. The prosecutor argued that Venirepersons #2, #7, and #55 should be struck for cause based on their inability to consider the full range of punishment. The following conversation then occurred:

> [Defense]: Well, I'd say that [Venireperson #2], we're not quite there. She said she was bothered by the high end. She didn't say she couldn't give it fair consideration. That's the note I have.
>
> . . . .
>
> THE COURT: Well, first off, let's deal with number seven. I believe that's a little bit more easy to deal with. I have him saying, "If it ain't murder, no way," so I think he's fairly qualified for the cause.
>
> My notes have number two as saying, you know, I have it in quotes, "No to the higher end." So I'm going to grant that cause as well.

The trial court also granted the State's challenge for cause to Venirepersons #55 and #48. The trial court then granted Robertson's challenges for cause to Venirepersons #1, #10, and #13.[3]

---

[3]Venireperson #1 had been robbed three times. Venireperson #10's ex-husband had been held at gunpoint during a robbery, and she also had problems with believing testimony from an accomplice witness. Venireperson #13 had been robbed when she worked as a bank teller. Although the State argued that Venireperson #13 had said that she could differentiate between different factual circumstances, the trial court replied that it would grant the challenge "out of an abundance of caution." *See Johnson v. State*, 43 S.W.3d 1, 8 (Tex. Crim. App. 2001) (Keller, P.J., concurring) (restating that under *Jones*, when the State is granted a challenge for cause that is later asserted to be erroneous, this constitutes reversible error only if the record shows that the defendant was deprived of a lawfully constituted jury, that the underlying policy is to liberally grant challenges for cause, and that courts should err on the side of granting challenges for cause).

Assuming, without deciding, that the trial court abused its discretion by granting the State's challenge to Venireperson #2, we must still determine whether Robertson was actually deprived of a fair and impartial, lawfully constituted jury. *See Gamboa*, 296 S.W.3d at 580 (quoting *Jones*, 982 S.W.2d at 394).

Robertson invites this court to "reassess" the court of criminal appeals's decision in *Jones* to apply rule 44.2(b)'s nonconstitutional harm analysis and to require a showing that the jury was not "lawfully constituted" before harm can be found. Specifically, Robertson argues that he was deprived of a lawfully constituted jury in that the erroneous granting of the State's challenge for cause deprived him of a number of peremptory challenges equal to the State.[4]

We may not "reassess," revisit, or otherwise march to our own drummer in contravention of the marching orders set forth by the court of criminal appeals. *See Wiley v. State*, 112 S.W.3d 173, 175 (Tex. App.—Fort Worth 2003, pet. ref'd) ("[A]s an intermediate appellate court we are bound to follow the pronouncements of the court of criminal appeals."); *State ex rel. Vance v.*

---

[4]In *Jones*, the court specifically rejected Robertson's theory that the erroneous exclusion for cause of a veniremember "is the same as if the State had been given an extra peremptory challenge," pointing out that a juror's disqualification is not related to the juror's desirability. 982 S.W.2d at 393–94 ("It is especially wrong to equate the State's challenge for cause to a peremptory challenge, because the State has the right to challenge disqualified jurors even when their disqualifications might seem to make them favor the State."). Further, the court also observed that the State's ability to exclude a challenged juror would not affect any of the defendant's substantial rights "because a defendant has no right that any particular individual serve on the jury." *Id*. at 393.

6

*Clawson,* 465 S.W.2d 164, 168 (Tex. Crim. App.) (stating that as the court of criminal appeals is the court of last resort in Texas in criminal matters, "no other court of this state has authority to overrule or circumvent its decisions, or disobey its mandates."), *cert. denied,* 404 U.S. 910 (1971). Further, as Robertson has not argued or shown—and the record does not reflect—that the jurors who served in his trial were not qualified, we conclude that he was not deprived of a lawfully constituted jury. *See Jones*, 982 S.W.2d at 393 (stating that "[t]he defendant's only substantial right is that the jurors who do serve be qualified," and that "[t]he defendant's rights go to those who serve, not to those who are excused"). Therefore, we overrule Robertson's first point.

## B. Penalty Range

In his second point, Robertson claims that the trial court erred by instructing the jury on the wrong penalty range, "thus informing the panel [Robertson] had a prior felony conviction and thereby prejudicing the panel."

We will first turn to the magistrate judge's instruction to the jury panel.

THE COURT: Okay. I will now give you some legal principles that will be involved in this case.

. . . .

If a defendant is found guilty, the same jury that determined guilt is called upon to assess punishment. The punishment phase is conducted immediately following the return of a guilty verdict. Following the punishment range—punishment phase, the jury will be instructed by the Court as to the range of punishment which they will consider for this—in the case. In a case involving aggravated robbery, the jury would be instructed that they could set the punishment anywhere from *15* (verbatim) *years* up to 99 years or

life.  In addition, they would be instructed that a fine of up to $10,000 may be assessed.  [Emphasis added.]

The punishment range for aggravated robbery is *five to ninety-nine years*, which was correctly stated by the prosecutor as set out below.  *See* Tex. Penal Code Ann. §§ 12.32, 29.03 (West 2011).  When a first degree felony is enhanced with a prior felony conviction, the punishment range increases to fifteen to ninety-nine years.  *Id*. § 12.42(c)(1) (West 2011 & Supp. 2011).

[Prosecutor]:  Okay.  Now, the punishment range for the offense of aggravated robbery, it's a first-degree felony under our law. . . .

Aggravated robbery with a deadly weapon is a first-degree felony, and it's up here on the board.  There's a punishment range.  It's not less than five years nor more than 99 years or life, and, in addition the jury can assess up to a $10,000 fine.  Anywhere from zero up to 10,000.  Okay?

. . . .

All right.  Now, I want to talk about another range, because—the reason I'm doing this is because, all felony cases in Texas, you know, you have a punishment range for different offenses like what I put up on the board, but there's also, depending on the case, if a person has prior convictions, prior felony convictions, the law increases the punishment.  Okay?  Figures, hey, second time around, you know, we're going to make it a little harsher on you the second time you commit a felony.

So the range for that, if it's shown—again, the burden is on us.  So if in any case, in this case a first-degree felony, agg robbery, if it's shown that the defendant has a previous felony conviction before he, you know, came back and did the robbery, then the punishment range increases, and I think you can see from there what it basically does is it raises the minimum.  *Instead of being a minimum of five, it's now a minimum of 15 because of the fact that he has the prior felony conviction.*  [Emphasis added.]

Does everybody see how that works?  And, again, the burden is on us to prove that.

8

[Venireperson #26]: I just have a question. So does that mean that you are notified that the Defendant has already had a previous felon[y] before the trial starts—

[Prosecutor]: No.

[Venireperson #26]: —or at the process of the trial or at the punishment phase or not at all?

[Prosecutor]: Here's—well—

[Venireperson #26]: I mean, I don't understand how that comes into play or when it does or if it does.

[Prosecutor]: Okay. This comes into play—the punishment range and the enhancement provisions come into play when you get to the punishment phase of the trial. You found him guilty. Now you've moved into the punishment phase, and you're deciding punishment. And like we talked about, one of the things that's important is the facts of the crime, but also the defendant's background and character. And if the background and character has taken the form of a felony conviction, then the legislature said, "We're raising the minimum from five to 15." So you see how that works? And that will be something—that applies—that's in any criminal case, whether it's a first-degree, second-degree felony, third-degree felony. There are enhancement provisions for any type of offense pretty much, and the legislature raises punishments for people who have been in trouble before and they've been convicted before. Does that make sense to everyone? Does anybody have questions about that?

[Venireperson #60]: Yeah. I just want to be clear that if there are prior convictions, will that be made known to the jury during the case, you're not allowed to do that, or would you be made aware of it only during the punishment phase?

[Prosecutor]: That's a punishment issue.

[Venireperson #60]: So before then, we won't be aware of it?

[Prosecutor]: Well, no, because like I said, in the guilt/innocence phase, you know, we're focused on the specific crime he's accused of.

9

[Venireperson #60]: Okay. So you're not allowed to use prior convictions to further—

[Prosecutor]: Right.

[Venireperson #60]: Okay.

[Prosecutor]: Now, with all of that said—yes, sir. [Venireperson #50]?

[Venireperson #50]: So when the Judge read 15 to 99, that was a slip of the tongue whenever he said 15 to 99 years?

[Prosecutor]: Well, that's part of the range.

[Venireperson #50]: Okay. I was just making sure that he didn't— that that wasn't specific to this case. That was just a—

[Prosecutor]: No, we can't go into specifics in this case.

[Venireperson #50]: Okay.

A review of the foregoing shows that no objection was made to the magistrate judge's statement.[5] To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009). Further, the trial court must have ruled on the request, objection, or motion, either expressly or

---

[5]*Cf. Jackson v. State*, 285 S.W.3d 181, 183–84 (Tex. App.—Texarkana 2009, no pet.) (quoting *Hart v. State*, 173 S.W.3d 131, 142 (Tex. App.—Texarkana 2005, no pet.), which states, "The Texas Court of Criminal Appeals has stated repeatedly that both *the [S]tate and the accused* have the right to inform the jury of the range of punishment applicable to an offense, including a range that is enhanced, and to qualify the panel on the full range of punishment.") (emphasis added).

implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). And, generally, even constitutional errors are forfeited by the failure to object at trial.[6] *Curry v. State*, 910 S.W.2d 490, 496 n.2 (Tex. Crim. App. 1995). Because Robertson failed to preserve this complaint for our review, we overrule his second point.

## IV. Conclusion

Having overruled both of Robertson's points, we affirm the trial court's judgment.

PER CURIAM

PANEL: MCCOY, J.; LIVINGSTON, C.J.; and MEIER, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 5, 2012

---

[6]While rule 33.1 does not apply to rights that are waivable only or to absolute systemic requirements, the violation of which may be raised for the first time on appeal, the magistrate judge's statement does not fall into either of the waivable or systemic categories. *See Mendez*, 138 S.W.3d at 339–44; *Saldano v. State*, 70 S.W.3d 873, 888–89 (Tex. Crim. App. 2002).