**AFFIRMED as MODIFIED and Opinion Filed March 2, 2021**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-19-01043-CR**

**STACY DWAYNE JACKSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 5**
**Dallas County, Texas**
**Trial Court Cause No. F14-76039-L**

## MEMORANDUM OPINION

Before Justices Schenck, Smith, and Garcia
Opinion by Justice Garcia

A jury convicted appellant of second-degree aggravated assault with a deadly

weapon and the court assessed punishment, enhanced by a prior felony conviction,

at forty-five years in prison.

In four issues, appellant argues that: (i) the evidence is insufficient to support

the conviction; (ii) the jury charge improperly includes the punishment classification

for the offense and the lesser-included offense; (iii) the charge improperly defines

reasonable doubt; and (iv) the court lacked jurisdiction because there is no transfer

order. The State requests that we modify the judgment to reflect that the court, not

the jury, assessed punishment. Concluding appellant's arguments are without merit, we modify the judgment, and as modified, affirm.

## I. BACKGROUND

Appellant severely beat Sharon Green with a board. Green suffered numerous injuries, including lacerations to her head and other parts of her body, two broken arms, and fractured toes.

Appellant was charged with first-degree aggravated assault with a deadly weapon. The case was tried to a jury and appellant was convicted of the lesser-included offense of second-degree assault with a deadly weapon. The court assessed punishment, enhanced by a prior felony conviction, at forty-five years in prison and entered judgment accordingly. Appellant appeals from that judgment.

## II. ANALYSIS

**Sufficiency of the Evidence**

Appellant's first issue argues that the evidence is insufficient to support the deadly weapon element of the offense. We disagree.

We review the sufficiency of the evidence to support a conviction by viewing all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

This standard gives full play to the fact finder's responsibility to resolve testimonial conflicts, weigh the evidence, and draw reasonable inferences from basic

facts to ultimate facts. *Id.*; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). The fact finder is the sole judge of the evidence's weight and credibility. S*ee* TEX. CODE CRIM. PROC. art. 38.04; *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder's. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murra*y, 457 S.W.3d at 448. We must presume that the fact finder resolved any conflicting inferences in the verdict's favor and defer to that resolution. *Id.* at 448–49. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Dobbs*, 434 S.W.3d at 170; *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014).

A person commits assault if he intentionally, knowingly, or recklessly causes bodily injury to another. *See* TEX. PENAL CODE ANN. § 22.01(a)(1). Assault becomes aggravated assault if the person causes serious bodily injury or used or exhibited a deadly weapon during the commission of the assault. *See id.* § 22.02(a) (1), (2). The penal code defines deadly weapon as "anything that in the manner of its use or intended use is *capable* of causing death or serious bodily injury." *Id.* §

1.07(a)(17)(B) (emphasis added). Serious bodily injury is "bodily injury that causes a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46).[1]

To justify a deadly weapon finding, the State is not required to prove that the weapon actually caused death or serious bodily injury. *See Moore v. State*, 520 S.W.3d 906, 908 (Tex. Crim. App. 2017); *Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008). The State is also not required to prove that death or seriously bodily injury was intended. *See Rivers v. State*, No. 01-08-00397-CR, 2009 WL 3321409, at *3 (Tex. App.—Houston [1st Dist.] Oct. 15, 2009, no pet.) (mem. op., not designated for publication) (citing *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000)). Rather, the State need only prove that the manner in which the weapon was used or intended to be used was "capable" of causing death or serious bodily injury. *See Moore*, 520 S.W.3d at 908; *Tucker*, 274 S.W.3d at 691. "Even without expert testimony or a description of the weapon, the injuries suffered by the victim can by themselves be a sufficient basis for inferring that a deadly weapon was used." *Tucker*, 274 S.W.3d at 691-92.

---

[1] We subsequently note that there is unassigned, albeit not egregiously harmful, error in the jury charge. But measuring the sufficiency of the evidence against a hypothetically correct jury charge does not change our analysis here. *See Walker v. State*, 594 S.W.3d 330, 335–36 (Tex. Crim. App. 2020) (sufficiency does not rest on how the jury was instructed but rather on whether the evidence supports the elements of the offense as defined by the hypothetically correct jury charge).

Green met appellant at a homeless shelter where they were both staying and they became sexually intimate.[2] Appellant became jealous when Green spoke with other men at the shelter and suspected that Green had a relationship with the shelter's supervisor. These and other problems caused Green to leave the shelter.

On the day of the assault, Green contacted appellant about some belongings she left at his daughter's house. He invited her to meet him at a barbecue hosted by a friend at a house where he was allegedly staying. When Green arrived, there was no barbecue and appellant was alone, drinking.

Appellant wanted to talk to Green, but she told him she just wanted to get her belongings. Appellant became hysterical.

Appellant pulled Green's hair, yanked her off the couch, and began beating her with a 2x4. Appellant told Green she couldn't "be in this town" if she would not be his girlfriend. Green lost and regained consciousness three times as appellant beat her with the board. The first time she awakened she was in a pool of blood. When she regained consciousness the third time, appellant was not in the living room. Green thought appellant would kill her if she did not leave, so she managed to pull herself up and get to a neighbor's house. Green had difficulty seeing because of the blood that was dripping over her face, and she could "hardly" move her arm as she lay on her side.

---

[2] Green initially testified that she and appellant had been sexually intimate and were in a dating relationship. She later testified that she and appellant had just been friends while living at the shelter and did not sleep together. Appellant testified that he and Green had "sexual encounters" but were never in a relationship.

Green rang the bell at the neighbor's house. A woman answered the door and Green told her that her boyfriend had done "this" to her.

The neighbor called the police. When they arrived, Green was lying on the front porch and was incoherent. She appeared to have been severely beaten and was bruised on her face, arms, and "pretty much all over her body." A chunk of flesh seemed to be missing from Green's right leg. Green struggled to talk but was able to identify herself. Green told the police that appellant was her ex-boyfriend.

The paramedic records admitted into evidence described the injuries paramedics observed at the scene, including a laceration to the back of Green's head, contusions on the left eyebrow and right temporal area, lacerations and bruising to the right and left forearms, and lacerations and bruising to the right and left shins. Green complained of pain in her upper and lower back and experienced tenderness when straightening her upper and lower extremities. The paramedics determined that Green required medical attention and transported her to the hospital.

Green's hospital records were admitted into evidence. They show that Green had surgery for broken bones in both arms. A plate was implanted in the left arm and a titanium piece inserted in the right to reduce the fractures. Each arm was covered with a cast.

Green received five staples to close the laceration on her head and stiches for lacerations on both legs. She also had fractures to a couple of toes, which made walking difficult. Green showed the jury the scars on her legs and forearms.

Green stayed in a domestic violence shelter after she was released from the hospital. A counselor and nurse assisted her with daily activities such as bathing and dressing. Green later moved to Detroit where her cousin helped her care for herself. Green continued to experience pain that was exacerbated by weather.

At some point, Green tried to work on an assembly line. But she had difficulty because of pain in her shoulders, arms, and hands and it was difficult for her to complete required tasks. Ultimately, Green was unable to keep the job because of pain from her injuries.

The evidence showed that the weapon in this case was a wood table leg. One piece of this blood-stained wooden leg was found in the living room where the assault occurred, and another piece was found in the trash can in the yard. Photos of both pieces of wood were admitted into evidence and published to the jury. The wood was also displayed in the courtroom for the jury.

Appellant argues that the board is "obviously a 1x2 piece of lumber," not a 2x2, and seems to suggest that the board was not capable of inflicting death or serious bodily injury because it broke during the attack. Appellant also argues that there is no evidence that he intended to use the board to inflict serious bodily injury.

The size of the board, however, is immaterial. Instead, the pertinent question is whether the manner in which it was used or intended to be used was capable of causing death or serious bodily injury. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B); *Moore v. State,* 520 S.W.3d 906, 908 (Tex. Crim. App. 2017). Green's testimony, as well as the

hospital and paramedic records establish the nature and extent of Green's injuries, and the jury could rationally infer from those injuries that the board was a deadly weapon. The jury could also draw this inference from the photographic and physical evidence of the board.

Based on this evidence, viewed in the light most favorable to the verdict, a rational jury could have reasonably concluded that appellant used the board in a manner that was capable of causing serious bodily injury or death. *See Rivers*, 2009 WL 3321409, at *4–5. Appellant's first issue is overruled.

**Charge Error**

Appellant's second and third issues argue that the jury charge was erroneous because it included improper comments on the weight of the evidence and because it defined reasonable doubt.[3]

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). When reviewing a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *Id*. If error occurred, whether it was preserved determines the degree of harm required for reversal. *Id*.

---

[3] Appellant also states, without argument or authority, that the charge was erroneous because of the manner in which it instructed the jury on the indicted offense. To the extent that appellant intended to include this as an issue or argument, it is waived for inadequate briefing. *See* TEX. R. APP. P. 38.1.

There was no objection to the charge in the court below. Unpreserved charge error warrants reversal only when the error resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). [4]

Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011). "Egregious harm is a high and difficult standard to meet, and such a determination must be 'borne out by the trial record.'" *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). "An egregious harm determination must be based on a finding of actual rather than theoretical harm." *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015).

The egregious harm inquiry is fact specific and must be performed on a case-by-case basis. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013). In making an egregious harm determination, we consider (i) the entire jury charge, (ii) the state of the evidence, including the contested issues and weight of probative evidence, (iii) the argument of counsel, and (iv) any other relevant information

---

[4] If the defendant preserved error by timely objecting to the charge, we reverse if the defendant demonstrates that he suffered some harm as a result of the error. *Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009).

revealed by the trial record as a whole. *See Almanza*, 686 S.W.2d at 171; *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015).

### A. Defining Reasonable Doubt

Appellant argues that the charge improperly defines "reasonable doubt" in violation of *Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000). We have rejected this argument on numerous prior occasions and reject it now.

The charge merely referred to "reasonable doubt," stating, "It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt." We have previously considered this instruction and held that the instruction does not violate *Paulson* because it does not define reasonable doubt. *See O'Canas v. State,* 140 S.W.3d 695, 701–02 (Tex. App.—Dallas 2003, pet. ref'd); *Chapin v. State*, No. 05-15-01009-CR, 2016 WL 4421570, at *6 (Tex. App.—Dallas Aug. 19, 2016, no pet.) (mem. op., not designated for publication); *Borens v. State,* No. 05-07-01516-CR, 2009 WL 998678, at *5 (Tex. App.—Dallas Apr. 15, 2009, no pet.) (mem. op., not designated for publication); *Bates v. State,* 164 S.W.3d 928, 931 (Tex. App.—Dallas 2005, no pet.).

Following our precedent, we resolve appellant's fourth issue against him.

### B. Comment on the Weight

Appellant argues that the jury charge erroneously referred to the punishment classifications of the indicted and lesser-included offenses. According to appellant,

–10–

the classifications were not law applicable to the case and the references constituted improper comments on the weight of the evidence.

The indicted offense of aggravated assault causing serious bodily injury with a deadly weapon, along with a family-violence finding, is a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.02(b)(1). Aggravated assault with either serious bodily injury or a deadly weapon is a second-degree felony. *See id.* § 22.02(b). Simple assault is a Class A misdemeanor. *See id.* § 22.01(b).

The application portion of the jury charge described the indicted offense as "first-degree aggravated assault causing serious bodily injury with a deadly weapon involving family violence." The charge also instructed on "second degree aggravated assault with a deadly weapon" and "second degree aggravated assault causing serious bodily injury." Finally, the application paragraph for assault described the offense as "misdemeanor assault."

The State argues the charge was not erroneous. We recognize that some courts have held that it is not error for a guilt/innocence charge to refer to the punishment classification of an offense. *See, e.g., Penrose v. State*, No. 10-02-00264-CR, 2004 WL 1903395, at *1 (Tex. App.—Waco Aug. 25, 2004, pet. ref'd) (mem. op., not designated for publication) (holding it was not error for the charge in a DWI trial to describe the offense as a third-degree felony because "a general definition and description of the offense in the jury charge is proper and does not constitute a comment on the weight of the evidence"); *Hawkins v. State*, 99 S.W.3d 890, 899–

–11–

900 (Tex. App.—Corpus Christi 2003), *rev'd on other grounds*, 135 S.W.3d 72 (Tex. Crim. App. 2004) (degree of the offense is part of the general definition and description of that offense); *Garza v. State*, No. 04-95-00223-CR, 1996 WL 383099, at *4-5 (Tex. App.—San Antonio July 10, 1996, pet. ref'd) (not designated for publication) (same). *But see Jackson v. State*, 285 S.W.3d 181, 182–83 (Tex. App.—Texarkana 2009, no pet.) (error but no egregious harm when guilt/innocence charge described classification of offenses); *Staggs v. State*, 503 S.W.2d 587, 587 (Tex. Crim. App. 1974) (error for court to instruct jury concerning penalty for offense); TEX. CODE CRIM. PROC. ANN. art. 37.07§ 2(a) (providing that trial court shall instruct jury on issue of guilt or innocence, without authorizing jury to pass upon the punishment to be imposed).

We need not decide whether the charge here was erroneous because assuming, without deciding that it was, the record does not show that appellant suffered egregious harm. *See Almanza*, 686 S.W.2d at 172.

The first *Almanza* factor requires our consideration of the entire jury charge. *Id.* The first section of the charge explains the indicted offense and the lesser-included second-degree assault offense. The second section defines the relevant terms and applicable mental states for those offenses. The third section contains the application paragraph for first-degree assault and instructs the jury to consider the lesser-included second-degree assault offense if it has a reasonable doubt. Bypassing

consideration of the second-degree assault application paragraphs for a moment,[5] the next section explains the law on innocence presumption, the State's burden to prove each and every element of the charged offense beyond a reasonable doubt, and directs that if reasonable doubt as to appellant's guilt exists after considering all evidence and instructions in the charge, the jury will render a "not guilty" verdict. The next section explains the court's evidentiary instructions, extraneous conduct, and that an indictment is not evidence of guilt. The final section contains procedural boilerplate. These correctly drafted sections of the charge do not favor a finding of egregious harm.

We have assumed without deciding that referring to the offense classifications was erroneous, so the charge is not error free. Therefore, we conclude that the jury-charge-as-a-whole factor leans slightly toward some harm, but alone, does not rise to egregious harm.

---

[5] Our review of the charge also reveals unassigned error. *See Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2016). Specifically, the charge erroneously separated second-degree aggravated assault into two different offenses: (1) aggravated assault with a deadly weapon, and (2) aggravated assault causing serious bodily injury. The actus reas of aggravated assault, however, is the causing of bodily injury; serious bodily injury and deadly weapon are merely aggravating factors that raise the offense to a second-degree felony. *See Rodriguez v. State*, 538 S.W.3d 623, 629 (Tex. Crim. App. 2018). A jury may return a guilty verdict on aggravated assault without specifying the aggravating factor it found true. *See Landrian v. State*, 268 S.W.3d 532, 540–41 (Tex. Crim. App. 2010) (charge correctly set out aggravated assault in disjunctive and authorized jury to reach a general verdict). In other words, jurors need not be unanimous on the aggravating factor—serious bodily injury or deadly weapon—when finding a defendant guilty of aggravated assault. *See Rodriguez*, 538 S.W.3d at 629; *Woodard v. State*, 294 S.W.3d 605, 608 (Tex. App.—Houston [1st Dist.] 2009, pet ref'd). By separating second degree aggravated assault into two different offenses, the charge forced the jury to unanimously agree on the aggravating factor it found true to reach a guilty verdict on aggravated assault. Because unanimity was not required, this unnecessarily increased the State's burden of proof. We cannot conclude that an increased burden on the State egregiously harmed appellant.

The second *Almanza* harm factor requires that we consider the state of the evidence, including contested issues and the weight of the evidence. *Almanza*, 686 S.W.2d at 171. Appellant's defensive theory was that he never had a dating relationship with Green and was not guilty of any form of assault. In fact, appellant testified that he was in Shreveport on the day of the assault and had never been inside the house where the assault occurred. There was little, if any, dispute about the nature of Green's injuries, the weapon used to cause her injuries, or the manner in which the weapon was used. Thus, the evidence of guilt was sufficiently overwhelming such that the state of the evidence does not weigh in favor of an egregious harm finding.

Under the third *Almanza* harm factor, we consider the arguments of counsel. *Almanza*, 686 S.W.2d at 171. The defense's jury argument emphasized the lack of a dating relationship between appellant and Green and further urged that appellant did not commit the offense. There was no mention of the classification levels of the offenses. The State devoted most of its argument to arguing that this was a domestic violence case because there was a dating relationship. The State also told the jury that if they did not believe that it was domestic violence, they could choose second-degree aggravated assault. The State briefly mentioned that there was no difference between the offense level for the two aggravated assault options. The arguments of counsel do not support an egregious harm finding.

In the last part of our harm analysis, we consider other relevant information revealed by the record. *Almanza*, 686 S.W.2d at 171. We have found no other relevant information that would weigh in favor of finding egregious harm. Considering each of the *Almanza* factors, we conclude that appellant did not suffer egregious harm from the inclusion of the offense classifications in the trial court's charge. We resolve appellant's second and third issues against him.

**Lack of a Transfer Order**

Appellant argues that the court lacked jurisdiction because the record does not include a transfer order from the indicting court but acknowledges that existing precedent contradicts his position. *See, e.g.*, *Keller v. State*, 604 S.W.3d 214, 231 (Tex. App.—Dallas 2020, pet. ref'd). He insists, however, that the controlling cases "simply cite to their antecedents without any Constitutional or statutory authority for the proposition that a jurisdictional defect can be cured by procedural default."

The fallacy of appellant's argument is that the absence of a transfer order is not a jurisdictional problem. It does not render the actions of the transferee court void. *See Lemasurier v. State*, 91 S.W.3d 897, 899 (Tex. App.—Fort Worth 2002, pet. ref'd); *accord Henderson v. State*, 526 S.W.3d 818, 821 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd); *see also* TEX. GOV'T CODE ANN. § 24.003(b)(2) (generally, a district judge may "hear and determine any case or proceeding pending in another district court in the county without having the case transferred"). Instead,

–15–

the absence of a transfer order is a procedural issue, properly addressed by a plea to the jurisdiction. *See Lemasurier*, 91 S.W.3d at 897.

Appellant did not file such a plea in the court below. His failure to do so results in forfeiture of the issue on appeal. *See Wilson v. State,* No. 05-18-00801-CR, 2019 WL 3491931, at *4 (Tex. App.—Dallas Aug. 1, 2019, no pet.) (mem. op. not designated for publication) (collecting cases). Appellant's fourth issue is resolved against him.

**Reformation of the Judgment**

The State's cross-point argues that we should modify the judgment to reflect that the court, not the jury, assessed punishment. We are authorized to reform a judgment to make the record speak the truth when we have the necessary information to do so. *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993).

Here, the record supports the requested modification. The State's cross-point is sustained.

## III. CONCLUSION

We modify the judgment to reflect that the court rather than the jury assessed punishment. As modified, the judgment is affirmed.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
191043F.U05

–17–



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

STACY DWAYNE JACKSON,
Appellant

No. 05-19-01043-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 5, Dallas County, Texas
Trial Court Cause No. F-1476039-L.
Opinion delivered by Justice Garcia.
Justices Schenck and Smith
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**MODIFIED** as follows:

to reflect that the court, not the jury, assessed punishment.
As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered March 2, 2021